Billy W. BEAL and Joan
M. Beal, Plaintiffs,

v.

JEFFERSON–PILOT LIFE INSURANCE
COMPANY, and Nancy Pierson,
Defendants.

Civ. A. No. 92–0532–AH–S.

United States District Court,
S.D. Alabama, S.D.

Aug. 21, 1992.

---

David P. Broome, McDonough & Broome, Mobile, Ala., for plaintiffs.

Cooper C. Thurber, and William E. Shreve, Jr., Lyons, Pipes & Cook, P.C., Mobile, Ala., for defendants.

## ORDER

HOWARD, Chief Judge.

This matter is before the Court on the "Plaintiffs' Motion to Remand this Case to the Circuit Court of Mobile County, Alabama." [Doc. # 7] For the reasons that follow, the motion to remand is DENIED.

## I. FACTS

It appears to the Court from the pleadings and the affidavits filed by the defendants in support of their motion for summary judgment that the facts of this case are as follows. Mr. Beal worked for Copy Graphics Center, Inc., until June 28, 1991, at which time his employment was terminated. Upon termination, he exercised his right under Copy Graphics' group employee health benefit plan to convert his insurance coverage to an individual policy. Mr. Beal claims in this lawsuit that his decision to convert to an individual policy was a result of the defendants' statement that coverage would be similar to that under Copy Graphics' group plan. Mr. Beal's new policy became effective on July 1, 1991, and the next day he suffered a heart attack. Many of the medical expenses Mr.

Beal incurred after his heart attack were not covered by his new insurance policy.

On May 11, 1992, the plaintiffs filed this action in the Circuit Court of Mobile County alleging one count of fraud in the inducement to purchase an insurance policy. The defendants removed the action to this Court based on asserted federal question jurisdiction premised on the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Soon thereafter, the defendants filed a motion for summary judgment [Doc. # 3], contending that the only count of the plaintiffs' Complaint is pre-empted by ERISA. The plaintiffs filed a motion to remand, [Doc. # 7], but have not responded to the motion for summary judgment.

## II. PLAINTIFFS' MOTION TO REMAND

■ The removal of this action was proper, and hence remand is inappropriate, if the plaintiffs' fraud in the inducement claim is pre-empted by ERISA. *Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir.1991) (ERISA is an example of "super pre-emption," which "convert[s] what would ordinarily be a state claim into a claim arising under the laws of the United States"); *Belasco v. W.K.P. Wilson & Sons, Inc.,* 833 F.2d 277, 282 (11th Cir.1987) ("ERISA pre-emption does not act as a defense to a state-law claim, which is the usual effect of federal pre-emption; instead, ERISA pre-emption converts the related claim into a federal question."); *Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791, 792 (11th Cir.1989). The analysis with regard to the question of pre-emption is that "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted," unless it is a law that "regulates insurance." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), *quoting* 29 U.S.C. § 1144(a). Thus, there are two issues to be decided with respect to whether removal was proper: (1) Whether Mr. Beal's converted insurance policy is an

"employee benefit plan" governed by ERISA, and (2) if so, whether the Beals' fraud in the inducement claim "relates to" the plan.[1]

## A. ERISA COVERAGE

■ The plaintiffs do not dispute that the group plan maintained by Copy Graphics, under which the plaintiff was covered before his employment was terminated, was an "employee benefit plan" regulated by ERISA. However, the plaintiffs contend that when Mr. Beal converted his policy under the plan to an individual policy after the termination of his employment at Copy Graphics, it was no longer governed by ERISA.

On this issue, the defendants have cited to the Court *Rasmussen v. Metropolitan Life Ins. Co.,* 675 F.Supp. 1497 (W.D.La. 1987). In *Rasmussen,* the plaintiff worked for an employer through which he was insured, and after he was laid off he exercised his conversion rights to obtain an individual policy. Later, the plaintiffs' wife gave birth to a child prematurely, and the majority of the family's substantial medical expenses were not covered by the converted policy. The Rasmussens sued on a number of state-law theories, and the district court held them all to be pre-empted. As a premise to this decision, the court determined that the policy after conversion was governed by ERISA, finding that the "plaintiffs' right to the converted policy as well as a designation of benefits to be contained therein existed solely by virtue of an ERISA employee benefit plan." 675 F.Supp. at 1506.

The Court considers the reasoning of *Rasmussen* to be persuasive, and finds that the policy at issue is an "employee benefit plan" under ERISA. *See also Howard v. Gleason Corp.,* 901 F.2d 1154 (2d Cir.1990) (finding that a state statute requiring notice of right to convert group policy to individual policy after termination was covered by ERISA pre-emption clause).

---

**1.** The plaintiffs have not argued, nor does the Court think such argument would be appropriate, that an Alabama fraud in the inducement claim is a law that "regulates insurance."

## B. RELATION OF CLAIM TO PLAN

█ In *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989), the Eleventh Circuit summarized its approach to ERISA preemption:

ERISA preempts all state laws which "relate to any employee benefit plan." 29 U.S.C.A. § 1144(a) (1985). According to the Supreme Court, we must interpret the phrase "relate to" under its broad common sense meaning so that a state law "relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983). Under this liberal interpretation, the Court has held that ERISA preempted certain employees' state common law tort and contract actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (ERISA preempted claims of tortious breach of contract, breach of fiduciary duties and fraud in the inducement arising from the improper processing of a claim).

Adhering to the Supreme Court's expansive view of ERISA preemption, our court has not limited ERISA's preemption to laws "dealing with the particular subject matters covered by ERISA, such as reporting, disclosure and fiduciary responsibility." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1469 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Rather, we have held that ERISA preempts state laws even if the "laws do not expressly concern employee benefit plans" but rather "amount only to indirect regulation of such plans." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir.1987); *Clark v. Coats and Clark, Inc.*, 865 F.2d 1237, 1243–44 (11th Cir. 1989).

Recognizing that ERISA can preempt general state common law causes of action, the problem becomes determining when a party's use of such a state law "relates to" an ERISA benefit plan. According to our recent decisions, a state law cause of action "relates to" an employee benefit plan if the employer's conduct giving rise to such claim was not "wholly remote in content" from the benefit plan. *Clark*, 865 F.2d at 1243. A claim does not, however, relate to a plan even though the employer's conduct occurred contemporaneously with an alleged ERISA violation, unless the facts relating to the employee's failure to receive benefits are relevant to the state law claim. *Clark*, 865 F.2d at 1245.

*Farlow*, 874 F.2d at 793–94. In *Farlow*, the Eleventh Circuit applied this "relates to" test in a case where it was not an employer being sued for a common law tort but the insurance agent and company. Thus, the *Farlow* test is the applicable test in this case.

It seems apparent to the Court that the facts relating to the Beals' failure to receive benefits are relevant to their state law claim. The gravamen of the Beals' fraud in the inducement claim is that the defendants caused Mr. Beal to convert to the individual policy by representing that coverage under the individual policy would be similar to that under Copy Graphics' group policy, that coverage was *not* similar, that if coverage had been similar then the Beals would have received benefits as needed, and presumably that if Mr. Beal had known that coverage was not similar then the Beals would have purchased insurance elsewhere which would have provided the necessary coverage. Thus, the Beals seem to be claiming that they would not have failed to receive benefits but for the alleged fraud, and this claim is not wholly remote in content from the benefit plan.

The actual facts of *Farlow* are nearly on all fours with the instant case. In *Farlow*, the plaintiffs alleged that the defendants enticed them to enter into a new group health insurance plan by representing that it provided the same coverage as their existing plan at a lower deductible. After switching to the new insurance company, the Farlows discovered that they were expecting a child and that their new insurance plan, unlike their former plan, did not provide maternity or pregnancy coverage. *Farlow*, 874 F.2d at 793. In finding the

Farlow's misrepresentation claim to be preempted by ERISA, the Eleventh Circuit noted that the alleged conduct was "intertwined with the failure to pay benefits." *Id.* at 794. The Court is of the opinion that in the instant case the alleged conduct is similarly intertwined with the failure to pay benefits.

Moreover, in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the United States Supreme Court examined whether a state-law wrongful discharge claim was preempted and had "no difficulty" in concluding that ERISA pre-emption applied because the employee's claim was predicated upon the existence of the plan. 498 U.S. at ——, 111 S.Ct. at 483. In the instant case, in order to have been eligible to convert to an individual policy, Mr. Beal "must have been insured by the Group Policy, or by the Group Policy and a group policy arranged by the Policyholder that had similar benefits, for the three months just before the date" that his employment with Copy Graphics was terminated. [Doc. # 5, Affidavit of John W. Donaldson, Exhibit A (Group Insurance Certificate), p. 24] Thus, his opportunity to convert to an individual plan, and the context of the alleged fraud, was predicated upon the existence of the benefit plan.

█ Finally, fraud in the inducement was one of the state tort claims held preempted by a unanimous Supreme Court in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), where there was no dispute that the claim related to an employee benefit plan and the only issue was whether another claim made by the plaintiff in that case was an exception to pre-emption.

The plaintiffs rely principally on *Martin v. Pate,* 749 F.Supp. 242 (S.D.Ala.1990), *aff'd without op. sub nom. Martin v. Continental Investors,* 934 F.2d 1265 (11th Cir.1991). In *Martin,* Judge Butler writing for this Court noted that "[t]he question of whether claims of fraud in the inducement are preempted by ERISA is a difficult one," *Id.* at 245, but found that *Pilot Life* was not controlling because the fraud claim

was not based on improper processing of his claim for benefits and determined that the fraud in the inducement claim in that case was *not* pre-empted. The Court agrees that the question is a difficult one, but does not find that *Martin* precludes a finding of pre-emption in this case.

In *Martin,* the plaintiff claimed fraud in the inducement by the defendants in convincing him to enroll in their ERISA-regulated insurance plan. As the Court explained,

> Martin's claim is that, at a time when he was not a beneficiary under Continental's policy, he was induced by misrepresentations made by Pate and Continental concerning coverage under the policy to relinquish his previous coverage and enroll in Continental's plan.

749 F.Supp. at 245–46. In the instant case, upon the termination of his employment Mr. Beal had no choice whether to relinquish his coverage under Copy Graphics' group plan. Mr. Beal was required to relinquish his coverage and his only choice if he wanted health insurance was either to enroll in an individual plan with the same insurance company, as allowed by the group plan, or to find insurance elsewhere.

The fact that the alleged fraud occurred in connection with Mr. Beal's change of insurance from one ERISA-regulated plan to another with the same company, provided through the first plan, is another key difference between this case and *Martin.* In *Martin,* the Court noted that

> [t]he mere fact that the subject of an alleged misrepresentation concerns the coverage terms of a contract for insurance which once entered into will constitute an ERISA regulated plan does not render a state law fraud claim premised on such misrepresentation sufficiently "related to" *the benefit plan* to warrant preemption.

749 F.Supp. at 246 (emphasis in original). The same cannot be said of the instant case, where it is alleged that fraud occurred in the exercise of a right *under the plan* to continue coverage after the termination of employment.

Moreover, in *Martin* the Court found that *Farlow* did not counsel a finding of pre-emption. The Court found that the misrepresentation of coverage provided under the policy did not relate to Martin's failure to receive benefits, because his own misrepresentation of his medical condition was what related to his failure to receive benefits. 749 F.Supp. at 247. In this case, the Court has found that a straightforward application of *Farlow* leads to a finding of pre-emption of the fraud in the inducement claim.

Finally, the Court is of the opinion that the pre-emption aspect of *Martin* may be dicta. In *Martin,* the Court found that there had been no fraud, so that the fraud in the inducement claim failed on its merits. 749 F.Supp. at 247. Thus, there was no necessity to reach the question of pre-emption with its constitutional overtones.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion to remand is DENIED. Pursuant to the Court's Order of August 20, 1992, the Court will take the defendants' motion for summary judgment under submission eleven (11) days from the date of this Order.